NATIONAL LABOR RELATIONS BOARD, Applicant,

v.

GENERAL MOTORS CORPORATION, Wayne Millington, Marvin Simon, Donald Thuma, Respondents.

No. C–1–80–339.

United States District Court, S. D. Ohio, W. D.

Sept. 10, 1980.

Engrid Emerson Vaughan, N.L.R.B., Cincinnati, Ohio, for applicant.

John M. Kunst, Cincinnati, Ohio, for respondents.

## MEMORANDUM

HOGAN, Senior District Judge.

The National Labor Relations Board (hereinafter NLRB) filed this application, seeking an order requiring obedience to a subpoena duces tecum and three subpoenas ad testificandum, under § 11(2) of the National Labor Relations Act, 29 U.S.C. § 161(2). The subpoena duces tecum was directed to respondent General Motors (hereinafter GM) and the subpoenas ad testificandum were served on respondents Millington, Simon, and Thuma. The sole issue for determination is whether the evidence sought by the NLRB relates to or touches the matter under investigation.[1] *See NLRB v. ITT Telecommunications*, 415 F.2d 768 (6th Cir. 1969).

The collective bargaining history of GM reveals dealings with many unions. While the majority of the company's hourly employees are represented by the UAW, approximately 30,000 GM employees are represented by the IUE. Since 1950, all of these employees have been a part of a single, multi-plant bargaining unit. This bargaining unit has covered, for the past thirty years, all factory employees at the following locations:

Delco Air Conditioning Division—Dayton, Ohio

Frigidaire Division—Dayton, Ohio

Delco Products Division—Dayton, Ohio

Delco Products Division—Rochester, New York

Packard Electric Division—Warren, Ohio

Delco-Remy Division—New Brunswick, New Jersey

In January, 1979, GM sold its appliance division, Frigidaire, to White Consolidated Industries. Under the terms of the sale, GM retained ownership of two manufacturing facilities near Dayton, Ohio, where the corporation anticipates opening light body truck and engine assembly facilities during the first half of 1981. The employees affected by this sale were part of the multiplant unit represented by IUE. Appliance production ceased and, with the exception of approximately 700 employees, all production employees were laid off. The 700 employees who remained on the GM payroll, without layoff interruption, have been assisting in the conversion of the retained facilities. When these facilities are completed, GM expects to employ approximately 4,500 people, of whom 3,500 will be production, maintenance and skilled trade employees.

Simultaneously with the announcement of the sale of Frigidaire, GM commenced bargaining with representatives of the IUE. The obvious subject was the impact of the sale upon Frigidaire factory employees. GM and the IUE entered into a Memorandum of Understanding which obligated GM to recall laid off Frigidaire employees to the converted plants in line with their Frigidaire seniority. Laid off employees would retain their Frigidaire seniority when recalled. These laid off employees remained on GM's employment rolls.

In June, 1979, the UAW filed a petition with the NLRB seeking a representation election. One month later, a rival union, the ISST, filed a similar petition. Both the UAW and ISST have made it clear that they seek only to represent the 700 employees who continued to work during the conversion period.

The NLRB will conduct this election if four conditions have been met: (1) the employer involved is engaged in a business affecting commerce, (2) a question concerning representation exists, (3) the group of employees which the labor organization seeks to represent is an "appropriate bar-

1. The Board has been called on to determine whether a 700-employee conversion unit is an appropriate unit for purposes of conducting a representation election among three unions. The unions are the International Union of Electrical, Radio & Machine Operators of America (hereinafter IUE), the International Society of Skilled Trades (hereinafter ISST), and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (hereinafter UAW).

gaining unit" under 29 U.S.C. § 159(b), and (4). the petitioning party has made a "sufficient showing of interest" to justify the holding of an election.[2] To determine if these prerequisites were satisfied, the NLRB began hearings and an investigation.

█ During the third day of these hearings, Hearing Officer James Murphy requested that GM produce certain witnesses and documents. GM objected to this request and declined to produce such evidence on the ground that it was not relevant. Subpoenas were issued. The following information was sought:

1) a before and after job description for all production and skilled employees,

2) a before and after description of all equipment,

3) a before and after comparison of supervision and management, and

4) a description of all physical changes in the plants.

GM filed a petition to revoke these subpoenas, but the Hearing Officer denied revocation. GM filed a request for special permission to appeal this decision. This request was denied by the NLRB. GM declined to respond to the subpoenas, and the NLRB filed the instant application seeking enforcement of these subpoenas.

We grant the NLRB's application for an order seeking obedience for these reasons:

First—The overriding concern of this Court is whether the information sought by the NLRB relates to or touches the matter under investigation, not whether the petitions of the UAW or the ISST have merit. GM has spent a great deal of time arguing the merits of these petitions. We refuse to address these points. The merits are before the NLRB, not this Court. Our limited scope of review must be kept in focus.

The conversion of the facilities in this case will result in new operations, production processes and products. The appropriate unit issue raised here requires an understanding of the relationships the employees in the requested unit have and will have with the entire production process. These relationships cannot be investigated absent information concerning both the part and the whole.

Second—GM has assumed that the unit requested by the petitions will be of limited duration. GM might well prevail here if this were true, but no such limitation in time appears to exist. In fact, the identity and function the unit will retain in the post-conversion facilities and production processes is a crucial issue before the NLRB. To answer the pertinent questions inherent in this issue, the information sought is needed.[3]

Third—GM has contended inferentially that the employees at the post-conversion

2. Despite encouragement by GM to do so, this Court should neither comment nor decide the merits of these issues. The issue here is limited to whether the information sought by the NLRB is related to or touches the matter under investigation.

3. As stated by the Hearing Officer in his order denying the petition to revoke the subpoenas:
Thereafter, on May 6, 1980, the Employer filed with the undersigned a Petition to Revoke Subpoenas, Motion for Dismissal and Memorandum Brief in support thereof. In its Motion, the Employer contends, in essence, that the employees sought by the Petitioner herein are part of a long-established multiplant bargaining unit and that, since the petitions seek only the employees at one plant of that unit, said petitions accordingly request an election in an inappropriate unit and should be dismissed without further hearing.
It is the opinion of the undersigned that such contentions assume as their premise one of the basic issues in question in this

case. Thus, assuming, *arguendo*, that the evidence so far adduced has established that the former Dayton Frigidaire employees were indeed part of a multi-plant bargaining unit and that, under ordinary circumstances, they could not on their own constitute an appropriate unit apart from the other plants. A serious question still remains as to whether the (assumed) multi-plant bargaining unit has and will continue to include the former Dayton Frigidaire employees after the conversion of the Dayton facility from one plant producing home appliances into two plants (with two seniority units), one producing truck engines and the other assembling trucks which do not include those engines. Thus, it appears to the undersigned that when a facility is, for all practical purposes, closed for at least two years, is almost entirely gutted and in some places has both roof and walls removed, undergoes possibly extensive changes in supervision, methods of operation and machinery, a question is raised

facility will be represented by the IUE. There is a question as to the validity of this inference. In view of this dispute, the issue of how the requested unit will fit into the overall picture of representation emerges. This issue is focused on the relationship question discussed previously.

Fourth—The final underlying concern here is the Hearing Officer's duty to seek information. All parties agree that such a duty exists. Disagreement develops over whether the information subpoenaed is necessary to carry out this duty. In light of our discussion above, we feel that the information sought is related to the matter under investigation and is, therefore, necessary for the Hearing Officer to properly dispatch his duty.

For the reasons stated above, the application of the NLRB is granted.[4]

concerning whether or not the employees of that facility remain part of a previously existing multi-plant bargaining unit. If such changes now underway at the former Frigidaire facility in Dayton are ultimately deemed sufficient to remove the employees involved from the (assumed) multi-plant unit, then it follows that a unit limited to such employees, such as sought by the Petitioner herein, may be found appropriate.

4. Respondent GM sought to compel the NLRB to supplement the record of this enforcement proceeding with copies of all exhibits filed by the parties with the Hearing Officer in the representation case. We find such an action to be unnecessary. A review of all the memoranda submitted in this case reveals no reference to exhibits in the representation cases. Such exhibits are not necessary for our review and, therefore, the respondent's motion is denied.